A01A1151. RODRIGUEZ v. NUNEZ.
(555 SE2d 514)

BARNES, Judge.

The administrator of an estate, Father Isaias Rodriguez, appeals the grant of summary judgment to a minor child who sued in superior court to establish that the decedent of the estate was her father. He argues (1) that the trial court erred in dismissing his notice of appeal on jurisdictional grounds; (2) that he was entitled to appeal

the summary judgment directly rather than by application for discretionary appeal; (3) that the trial court did not have jurisdiction to determine paternity under OCGA § 19-7-40; and (4) that the trial court erred in granting summary judgment on the merits.

We hold that the trial court did not have jurisdiction to dismiss the direct appeal, that the summary judgment was directly appealable, and that the plaintiff failed to state a claim for relief pursuant to OCGA § 19-7-40 et seq., the "Determination of Paternity" article of the "Parent and Child Relationship Generally" chapter of the "Domestic Relations" title of the Code. The appellant's enumeration of error regarding the merits of the summary judgment is therefore moot.

Mario Adolfo Rivas died in a motor vehicle accident on March 9, 1997. He was unmarried and intestate. Father Rodriguez petitioned the Probate Court of Carroll County in March 1998 for letters of administration, indicating that Rivas' mother and two sisters were his only heirs and had selected him to serve as administrator. The probate court granted the petition a month later. As administrator, Rodriguez filed a wrongful death suit in June 1998 in Fulton County State Court against the other driver in the automobile collision.

Almost a year later, in May 1999, Sandra Elizabeth Echeverria Nunez, as the natural mother and guardian of Hilda Catalina Rivas (Hilda), petitioned the probate court to revoke Rodriguez's letters of administration, asserting that Hilda is the daughter and only child of the decedent.[1] The probate court entered an order that day directing Rodriguez to show cause why his letters of administration should not be revoked. The only other evidence in the record regarding the probate court action is Rodriguez's October 19, 1999 motion to dismiss the petition for revocation of his letters, but no order on the motion appears and both parties agree that the revocation petition remains pending in the probate court.

Meanwhile, on October 15, 1999, Nunez filed a "Complaint for Determination of Paternity" in Carroll County Superior Court, in her capacity as Hilda's next friend and guardian against Rodriguez in his capacity as the administrator of Rivas' estate. She alleged in the complaint that Rivas' estate was created in the Carroll County Probate Court, that Rodriguez resides in Georgia, and that he was subject to the jurisdiction of the Carroll County Superior Court by virtue of his capacity as the estate administrator. She further asserted that Hilda was the estate's sole heir pursuant to OCGA § 53-2-1 (b), that she was entitled to select the estate administrator under OCGA § 53-6-

---

[1] Nunez had filed a wrongful death action in the U. S. District Court for the Northern District of Georgia on February 2, 1999. Rodriguez intervened, and the trial court stayed discovery on August 16, 1999, until further order.

20, and that the superior court had "exclusive jurisdiction over the issue of paternity in Georgia pursuant to OCGA § 19-7-40." Nunez prayed for a declaration pursuant to OCGA § 19-7-49 (a) that Rivas was Hilda's father and an order "requiring genetic testing of the decedent and Plaintiff pursuant to OCGA §§ 19-7-43, 19-7-45, and 19-7-46." Rivas, who was in Georgia on a work visa when he died, is buried in Guatemala City, Guatemala, which is the domicile of Nunez and her daughter Hilda.

Rodriguez answered and moved to dismiss the complaint, asserting among other affirmative defenses that Nunez failed to state a claim or cause of action upon which relief could be granted and that the probate court, not the superior court, had jurisdiction to determine Rivas' heirs. Nunez responded to the motion, then moved for summary judgment, tendering copies of numerous Guatemalan documents and translations, family pictures, letters, and pleadings from the federal case. Rodriguez opposed the motion, arguing the merits and incorporating by reference all pleadings in the file.

The trial court granted summary judgment to Nunez. In its order, the trial court held that "Hilda Catalina Rivas is the natural daughter of the decedent, Mario Adolfo Rivas[,] based upon the decedent's signature appearing on Hilda Catalina Rivas' certified birth certificate pursuant to OCGA § 19-7-46.1, and the defendant[']s failure to rebut this presumption with any admissible evidence."

Rodriguez filed a timely notice of direct appeal, but Nunez moved in the trial court to dismiss the appeal because it was a domestic relations matter that should have been brought by application for discretionary appeal. The trial court agreed and dismissed Rodriguez's appeal. From this order of dismissal Rodriguez then filed an application for discretionary appeal, but because the dismissal of an appeal by the trial court is subject to direct appeal, we granted the application. See OCGA § 5-6-35 (j). Rodriguez then filed his notice of appeal, and the case is thus before us for consideration.

1. This case is properly before us because the dismissal of an appeal by the trial court is subject to direct appeal. *Brown v. E.I. du Pont de Nemours & Co.*, 240 Ga. App. 893, 894 (1) (525 SE2d 731) (1999).

2. Rodriguez contends that the trial court erred in dismissing his appeal. "Those circumstances under which a trial court may properly dismiss an appeal are strictly limited." *Castleberry's Food Co. v. Smith*, 205 Ga. App. 859, 860 (1) (424 SE2d 33) (1992). Those circumstances include causing an unreasonable delay in having the transcript prepared, the record transmitted, or costs paid, OCGA § 5-6-48 (c), when no final judgment has been entered and no certificate of immediate review obtained, *Jones v. Singleton*, 253 Ga. 41, 42 (1) (316 SE2d 154) (1984), or when the appeal becomes moot. *Attwell v.*

*Lane Co.*, 182 Ga. App. 813, 814 (1) (357 SE2d 142) (1987). In *Castleberry's Food Co. v. Smith*, supra, however, we held a trial court had no authority to dismiss an application for discretionary appeal because it should have been a direct appeal. "We are not willing to construe legislation so broadly as to divest ourselves of the responsibility for delineating the scope of appellate jurisdiction pursuant to OCGA § 5-6-35, and to place that responsibility on overburdened trial courts." Id. at 860 (1). Therefore, the trial court erred in dismissing Rodriguez's appeal.

3. We next consider Nunez's argument that we have no jurisdiction to consider the grant of summary judgment, because Rodriguez filed a direct appeal of the trial court's grant of summary judgment to Nunez. Nunez argues the appeal should have been by discretionary application, citing cases in which we have held that "[a]ppeals arising out of paternity petitions are domestic relations cases which require compliance with the discretionary appeal procedure of OCGA § 5-6-35." *Brown v. Dept. of Human Resources*, 204 Ga. App. 27 (418 SE2d 404) (1992); see also *Smoak v. Dept. of Human Resources*, 221 Ga. App. 257 (471 SE2d 60) (1996). We must read these cases in context, however, and recognize that they involve actions against a father or putative father for child support.

The facts of this case are closer to those in *Families First v. Gooden*, 211 Ga. App. 272 (439 SE2d 34) (1993), involving a declaratory judgment action to determine which man had the right to consent to a child's adoption. The appellee moved to dismiss that appeal on the ground that it involved a paternity case subject to the discretionary appeal procedures in OCGA § 5-6-35. We did not agree that the case was "an appeal of a paternity case. While one issue involves paternity, it is ancillary to more significant issues in this appeal." Id. at 274 (1). Similarly, the paternity issue in the case before us is ancillary to the more significant issues of estate administration and inheritance, which do not fall under OCGA § 5-6-35 (a) (2). The propriety of the trial court's grant of summary judgment to Nunez is therefore properly before us on direct appeal.

Moreover, the fact that Nunez asserted this was a claim under OCGA § 19-7-40 et seq. does not make it so. There is no magic in the title given to her complaint; under our rules of pleading, it is substance and not mere nomenclature that controls. *Anderson v. Bruce*, 248 Ga. App. 733, 736 (2) (548 SE2d 638) (2001); *Manning v. Robertson*, 223 Ga. App. 139, 142 (2) (476 SE2d 889) (1996).

Further, not all appeals involving a child's relationship with her parents are subject to the discretionary appeal procedures. For example, a final order in a deprivation proceeding is not a "child custody" order subject to the discretionary appeal process, because the issue is primarily whether the child is deprived, and only secondarily where

she will be placed. *In the Interest of J. P.*, 267 Ga. 492, 493 (480 SE2d 8) (1997). "Domestic relations" cases are subject to the discretionary appeal process "[w]here the underlying subject matter, i.e., the issues sought to be appealed, clearly arises from or is ancillary to divorce proceedings, or is derived from a marital relationship and divorce." (Punctuation omitted.) Id. This is not one of those cases.

4. Before reaching the merits of the summary judgment grant, we consider whether the trial court should have granted Rodriguez's motion to dismiss for failure to state a claim under OCGA § 19-7-40 et seq. "A trial court should grant a motion to dismiss . . . when, assuming the allegations in the complaint are true, the plaintiff would not be entitled to any relief under the facts as stated and the defendant demonstrates that the plaintiff could not introduce evidence that would justify granting the relief sought. Our review is de novo." (Footnotes omitted.) *Moore v. BellSouth Mobility*, 243 Ga. App. 674 (534 SE2d 133) (2000).

Nunez brought her complaint against estate administrator Rodriguez pursuant to the paternity statutes, OCGA § 19-7-40 et seq. The Supreme Court of Georgia, while considering whether the paternity statutes violated principles of equal protection, recently clarified that "[o]ur paternity statutes were enacted to deal with the problem of defaulting fathers." *Palmer v. Bertrand*, 273 Ga. 475 (541 SE2d 360) (2001).

> The paternity statutes recognize the intrinsic differences in the circumstances of fathers and mothers of illegitimate children. Indeed, such statutes have eliminated the gender-based discrimination of the common law, which placed a duty of support on the mother, but not on the father. *The very purpose of those statutes is to establish the father's duty of child support.* OCGA § 19-7-49 (a).

(Citation omitted; emphasis supplied.) Id. at 476.

In fact, the paternity article is contained within the title "Domestic Relations" and the chapter "Parent and Child Relationship Generally." This case clearly does not involve "domestic relations" or family law, because the putative father is not alive, and includes no issues of child support, adoption, custody, or visitation. The probate court has jurisdiction to determine paternity when the issue arises in the context of inheritance; for one thing, OCGA § 53-2-3 specifically governs the rights of inheritance of a child born out of wedlock, within the title "Wills, Trusts, and Administration of Estates" and the chapter "Descent and Distribution." See, e.g., *In re Estate of Slaughter*, 246 Ga. App. 314 (540 SE2d 269) (2000).

To consider the matter from another angle, if Nunez sought to

establish her ward's right to inherit from anyone other than a putative father, such as a grandfather or cousin or sibling, the proper forum to decide the issue would clearly be the probate court. No parallel system exists to determine fraternity, for example, in the superior court rather than the probate court, and it is illogical to place this issue within the framework of OCGA § 19-7-40 et seq. simply because the decedent is the putative father rather than, say, the putative brother or any other relative. Nunez could not recover on her complaint for a determination of paternity pursuant to OCGA § 19-7-40 et seq. under any conceivable set of facts, because that statute is not the proper vehicle to resolve the descent and distribution issues involved.

While Nunez asserts in her brief that the probate court stayed action on the petition to revoke Rodriguez's letters of administration and that Rodriguez consented to the stay, no evidence of those facts appears in the record. The record does show, however, that Rodriguez raised the affirmative defense of failure to state a claim in his superior court answer and motion to dismiss.

The probate court has exclusive jurisdiction over this matter. OCGA § 15-9-30 (a) (10); *Heath v. Sims*, 242 Ga. App. 691, 692 (1) (531 SE2d 115) (2000) ("[P]robate courts have 'original, exclusive, and general jurisdiction' of 'all . . . matters and things as appertain or relate to estates of deceased persons.' "). Therefore, we vacate the judgment of the superior court, remand this case, and direct the trial court to dismiss Nunez's complaint without prejudice.

5. Rodriguez's remaining argument on the merits of the summary judgment is rendered moot in light of Division 4.

*Judgment vacated and case remanded with direction. Smith, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 17, 2001 — 

*Smolar, Roseman, Brantley & Seifter, Yehuda Smolar, G. Grant Brantley, Antoinette D. Johnson, Douglas J. Davis*, for appellant.

*Alembic, Fine & Callner, Seth A. Litman, G. Michael Banick, Michael K. Watson*, for appellee.